**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary D. Linich, | No. CV 05-2983-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Broadspire Services, Inc.; Towers Perrin Long-Term Disability Plan, | |
| Defendant. | |

Defendants Broadspire Services, Inc. and Towers Perrin Long-Term Disability Plan have filed a Motion for Partial Summary Judgment requesting a determination of the standard of review in this ERISA action (Dkt. #14 & 15). Plaintiff has filed a Response (Dkt. #23 & 24), a Rule 56(f) Affidavit (Dkt. #25), and a Supplemental Citation of Authority in Support of her Response (Dkt. #28). Defendants have filed a Reply (Dkt. #29) and a Response to Plaintiff's Rule 56(f) Affidavit.

**BACKGROUND**

Plaintiff Mary Linich has sued Defendants Broadspire Services, Inc. ("Broadspire") and Towers Perrin Long-Term Disability Plan (the "Plan"). Tower Perrin funds and maintains the Plan for which Broadspire is the claim administrator. Plaintiff worked as an administrative assistant for Towers Perrin before being diagnosed with fibromyalgia and

1  Chronic Fatigue Syndrome, which prevented Plaintiff from being able to perform her
2  secretarial duties or any other occupation for which she is suited. Plaintiff applied for and
3  began receiving long-term disability benefits from Towers Perrin on June 1, 1999. To
4  remain eligible for long-term disability benefits under the Plan, Plaintiff must show that she
5  was unable to perform her job for the first 130 weeks that she is disabled. After 130 weeks,
6  Plaintiff is required to show that she is unable to perform any occupation for which she
7  reasonably could be suited based on her education, training, and experience.

8  On June 1, 2004, the Plan terminated Plaintiff's long-term disability benefits asserting
9  that Plaintiff had not provided medical documentation to support her disability status. On
10 July 22, 2004, Plaintiff appealed Broadspire's decision, and on July 6, 2005, Broadspire
11 issued its final denial of Plaintiff's benefits.

## LEGAL STANDARD

13 Summary judgment is properly granted when no genuine and disputed issues of
14 material fact remain, and when, viewing the evidence most favorably to the non-moving
15 party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; Celotex
16 Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Eisenberg
17 v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.1987).

18 Initially, the moving party bears the burden of showing that there is no material factual
19 dispute. Therefore, the court must regard as true the opposing party's evidence, if supported
20 by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d
21 at 1289. The court must draw all reasonable inferences in favor of the party against whom
22 summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
23 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Intel Corp. v. Hartford Accident & Indem.
24 Co., 952 F.2d 1551, 1558 (9th Cir.1991).

25 The burden then shifts to the non-movant to establish the existence of material fact.
26 Celotex, 477 U.S. at 323, 106 S.Ct. 2548. The non-movant "must do more than simply show
27 that there is some metaphysical doubt as to the material facts" by "com[ing] forward with

1 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 586-87, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)).

A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. Id. at 247-48, 106 S.Ct. 2505.

## DISCUSSION

### A. APPLICABLE PLAN DOCUMENTS

The Court first considers what Plan policy governs the outcome of the case. Plaintiff asserts that the Plan document itself is lacking because it covers six plans in thirteen pages – some of which are only half a page of print – and it only mentions the long-term disability ("LTD") benefits plan once. Plaintiff acknowledges that new terms added to a SPD may be incorporated into the Plan provided the new term meets all of the "statutory, regulatory, and Plan requirements for modifying the Plan." White v. Jacobs Eng'g Group Long Term Disability Benefit Plan, 896 F.2d 344 348 (9th Cir. 1989). Plaintiff claims, however, that there is no evidence that the terms of the SPD were properly added to the Plan and that the SPD does not satisfy the requirements of the regulations.

Defendants contend that the SPD contains the Plan language applicable to the determination of Plaintiff's benefits. Defendants cite Castillo v. Cigna Healthcare, 11 Fed. Appx. 945, 2001 WL 638403 (9th Cir. June 7, 2001), for the proposition that the court may consider the SPD in making the determination regarding a grant of discretionary authority. The court in Castillo stated that the language in the SPD granted complete discretionary authority to the plan administrator, which was found sufficient to unambiguously vest discretion and shift the review of the plan administrator's determination to *de novo*.

The Ninth Circuit has looked to the SPD to find a grant of authority and discretion to the plan administrator when making a determination as to benefit eligibility. See Bowers v. IBM Life Ins. & Survivors Income Benefit Plan, 1997 WL 603891, at *1 (9th Cir. Sept. 30,

1997); Castillo, 11 Fed. Appx. 945, 2001 WL 638403, at **3. A provision in the SPD can establish the terms of the plan if the provision meets all the statutory, regulatory, and plan requirements for modifying the plan. White v. Jacobs Eng'g Group, 896 F.2d at 348. "'Any material modification in the terms of the plan' must be filed 'within 60 days after such modification . . . is adopted or occurs.'" Id. Quoting 29 U.S.C. §§ 1022(a)(2), 1024(a)(1)(D). An exception to the requirement of filing a modification exists if the modification is "[i]ncorporated in a summary plan description or supplement filed with the Secretary of Labor pursuant to § 2520.104a-3." Id. Quoting 29 C.F.R. § 2520.104a-4(b)(2)(i). Thus, if the SPD contains 106 pages, which includes a more detailed explanation of the Plan, and the modification was properly filed, the Court may consider the additional Plan terms as presented in the SPD. Furthermore, there is no evidence to suggest that Defendants have not properly complied with ERISA requirements. Therefore, the Court considers all Plan documents in interpreting the terms of the Plan.

Plaintiff continues on to argue that if the SPD is a controlling Plan document, the 1999 SPD Plan, in place when she first filed her claim, is the applicable Plan document – rather than the July 2003 version of the SPD. See Music v. Western Conference of Teamsters Pension, 712 F.2d 413 (9th Cir. 1983) (holding that benefits "vest immediately when that participant becomes permanently disabled . . . it is the occurrence of the disabling injury which ultimately and fundamentally establishes the participant's right to the disability benefits."). Thus, Plaintiff asserts that the present uncertainty about whether the SPD meets the statutory, regulatory, and Plan requirements makes it impossible to determine at this time whether the Plan, the SPD, or a third-party contract governs the terms of the Plan under which a determination of Plaintiff's benefits should be made.

**Music is distinguishable from the case at bar.** In Music the court considered the narrow issue of the benefit amount due under a disability pension plan when the plan required a waiting period. Music, 712 F.2d 413. During the waiting period, a new collective bargaining agreement with diminished benefits was instated and the court considered what policy terms applied to the plaintiff's claim for disability pension benefits. Id. at 415. The

1  court in Music found that when determining benefits due under a disability pension plan, the
2  applicable policy is the one in place when the participant's rights to the benefits vest, rather
3  than a subsequent revised policy. Id. at 420.
4      Plaintiff also cited Gibbs ex rel. Estate of Gibbs v. CIGNA Corp., 440 F.3d 571, 576
5  (2nd Cir. 2006) and Knudson v. City of Ellensburg, 832 F.2d 1142, 1143 (9th Cir. 1987) in
6  support of the argument that the 1999 SPD is the controlling document. However, Gibbs is
7  a non-precedential Second Circuit case that is distinguishable from the law in the Ninth
8  Circuit. Knudson is not an ERISA case, as it addresses disability benefits for a city police
9  officer. Government-employee benefit plans are not subject to ERISA regulation. Thus,
10  neither Gibbs nor Knudson are applicable here.
11      Defendants cite an Eastern District of California case which cites Grosz-Salomon v.
12  Paul Revere Life Ins. Co., 237 F.3d 1154, 1159 (9th Cir. 2001), for the proposition that when
13  making a determination as to the appropriate standard of review, a court must look at the
14  revised plan in effect at the time of the claim administrator made the benefit determination.
15  Defendants assert that the claim decision was made May 12, 2004. Therefore, Defendants
16  assert, the applicable Plan is the July 2003 SPD.
17      The Ninth Circuit has distinguished benefits sought under ERISA pension plans from
18  benefits sought under ERISA LTD benefits plans. See Grosz-Salomon, **237 F.3d at 1160.**
19  In Grosz-Salomon the Ninth Circuit held that the revised provisions of the ERISA LTD
20  policy in existence at the time that disability insurer denied continuing benefits – rather than
21  ERISA plan as it existed when employee became disabled and originally filed her disability
22  claim – determined the standard of review of administrator's decision. Id. The court stated
23  that the fact that the plaintiff "became disabled and filed her disability claim while the first
24  policy was in effect was irrelevant; it does not entitle her to invoke that plan's provisions in
25  perpetuity." Id.
26      Here, as in Grosz-Salomon, the issue is which policy dictates the standard of review
27  of the denial of Plaintiff's LTD benefits. As in Grosz-Salomon, the plan in existence at the
28

1  time the plan administrator denied Plaintiff's continued LTD benefits – the July 2003 SPD
2  – is the applicable policy under which to determine Plaintiff's claim for benefits.

3  **B.     PLAN ADMINISTRATOR'S DECISION-MAKING ROLE**

4  In actions to recover benefits due under an ERISA plan where the plan administrator
5  denied benefits, the court employs a *de novo* standard of review "unless the benefit plan gives
6  the administrator or fiduciary discretionary authority to determine eligibility for benefits or
7  to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115,
8  109 S.Ct. 948 (1989). When an administrator has discretionary authority, federal courts
9  apply a more deferential abuse of discretion or arbitrary and capricious standard of review
10 to the administrator's decision. See, e.g., Sandy v. Reliance Standard Life Ins. Co., 222 F.3d
11 1202, 1204 (9th Cir. 2000). When the plan administrator exercises such discretion, the
12 default *de novo* review standard shifts to an abuse of discretion standard even if the
13 administrator has a conflict of interest. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955,
14 965 (9th Cir. 2006) (citing Firestone, 489 U.S. at 115). To meet its burden of showing a grant
15 of discretion, the plan administrator must show that the plan "unambiguously" establishes it
16 discretionary authority. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir. 1999)
17 (*en banc*); see, e.g., Abatie, 458 F.3d at 963-64 (holding that there are no "magic" words that
18 conjure up discretion on the part of the plan administrator, but the granting of the power to
19 interpret plan terms and to make final benefits determinations confers discretion on the plan
20 administrator). The plan administrator "carries the burden of showing that the grant of
21 discretion to the plan administrator is unambiguous. Thomas v. Oregon Fruit Prod. Co., 222
22 F.3d 991 (9th Cir. 2000).

23 Defendants assert that the 2003 SPD grants to Broadspire as the Plan Administrator,
24 "the power and authority to construe the provisions of the plans and . . . sole discretion in
25 making determinations . . . including but not limited to, determinations of fact, eligibility for
26 benefits, and deciding any dispute that may arise regarding the rights of participants. . . ."
27 thereby warranting an "abuse of discretion" review standard.
28

Plaintiff argues that the Plan document itself does not delegate discretionary authority to Broadspire but, rather, the Plan and the SPD name Towers Perrin as the Plan Administrator and the responsible party for appointing a Plan Administration Committee ("Committee") to administer the Plan. Plaintiff acknowledges that the Plan permits the Committee to delegate certain duties but asserts that the Plan prohibits the delegation of fiduciary duties. Thus, Plaintiff asserts that Broadspire could not have been exercising discretion when it terminated Plaintiff's long-term disability benefits. Therefore, Plaintiff claims, the Court's review of Plaintiff's denial of benefits should be *de novo*.

The SPD states that Committee, appointed by Towers Perrin as the administrator of the Plan,

> has the power and authority to construe the provisions of the plans and has sole discretion in making determinations under the plans, including, but not limited to, determinations of fact, eligibility for benefits, and deciding any dispute that may arise regarding the rights of participants or their dependents under the plans. All interpretations and decision of the Plan Administration Committee are final and binding on all interested parties.

SPD, at B-2. The language in the SPD does unambiguously grants decision-making discretion to the Committee, thereby shifting the standard of review to abuse of discretion. However, the Committee is appointed by the board and works on behalf of the Company. Plan, at BROAD001551.

Neither the Plan language nor the SPD unambiguously shifts discretionary authority from the Committee to Broadspire as Defendants have asserted. In one instance the SPD states that the Plan is administered by Kemper, Broadspire's predecessor. However, "administered by" could mean that Broadspire is the plan administrator or merely that it is the claims administrator. If it is the claims administrator, it would not have discretion to make benefit determinations but, rather, would manage the claims for the Committee. Nowhere else does the Plan or the SPD convey discretionary authority to Broadspire.

Under ERISA, a named fiduciary may delegate its fiduciary responsibilities:

> The instrument under which a plan is maintained may expressly provide for procedures . . . (B) for named fiduciaries to designate persons other than

>named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

ERISA, 29 U.S.C. § 1105(c)(1) (1988). However, the Court does not find that the Plan unambiguously grants discretion to Broadspire as an unnamed fiduciary. Defendants' assertion that the 2003 SPD grants power and authority to construe the Plan provisions is not compelling because, in making their assertion, Defendants cite the language granting the power and authority to the Committee, not to Broadspire. The Court recognizes that the Plan documents do provide the option for the Committee to delegate authority. However, the Court does not find language in the Plan documents specifically and unambiguously granting authority directly to Broadspire nor to Broadspire as an unnamed fiduciary. Thus, the Court must consider the conflict of interest between Towers Perrin and the Committee.

**C.    CONFLICT OF INTEREST**

The existence of a conflict of interest is relevant to how a court conducts abuse of discretion review. Abatie, 458 F.3d at 965 citing Firestone, 489 U.S. at 115. The Supreme Court in Firestone cautioned that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115.

The Ninth Circuit's recent ruling in Abatie changes the guidelines under which a court reviews a case where the plan administrator has discretion but operates under a conflict of interest, as here. Under Abatie, conflict is presumed where the administrator is the funding source and decisionmaker. Id. at 965. In other words, a plaintiff no longer needs to produce evidence of a serious conflict. Id. Courts must "tailor the review," after weighing "all the facts and circumstances," including the administrator's inherent conflict, that show whether it abused its discretion. Id. at 968. In evaluating the conflict's effect on the benefits decision, the Court may consider evidence outside the administrative record. Id. at 970.

In light of the new guidelines set forth in Abatie, the Court finds that a Defendants' request for a determination of the standard of review is premature. The Court is unable to

make a determination at this time as to whether the Plan Administrator's conflict of interest warrants *de novo* review.

### D.  RULE 56(f) REQUEST FOR ADDITIONAL DISCOVERY

The Ninth Circuit's recent ruling in Abatie also changes Plaintiff's right to seek discovery regarding the Plan Administrator's conflict of interest.  Prior to Abatie, when the standard of review was for abuse of discretion, a district court may review only the evidence that was presented to the plan administrator or fiduciary.  Banuelos v. Construction Laborers' Trust Funds for Southern California, 382 F.3d 897, 904 (9th Cir.2004), cert. denied, 545 U.S. 1127, 125 S.Ct. 2936 (2005).

Abatie holds that in determining whether the conflicted fiduciary abused its discretion, the court may consider evidence outside the administrative record:

> The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise. See Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999) (holding that . . . [i]t is not clear that any single answer covers all of the variations in ERISA cases; the 'record' may depend on what has been decided, by whom, based on: what kind of information, and also on the standard of review and the relief sought").

Abatie, 458 F.3d at 970.

Again, in light of Abatie, the Court finds that Plaintiff has a valid claim for discovery outside the administrative record regarding the conflict of interest involved in this case.

**Accordingly,**

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Dkt. #14) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's request for discovery outside the administrative record (Dkt. #25) is granted.  The parties are given forty-five days from the file-date of this Order to conduct discovery on the conflict of interest involved in this case.

**IT IS FURTHER ORDERED** that the parties shall file briefs with the Court not in excess of five pages in length regarding the appropriate standard of review.  Such briefs shall

1  be filed no later than fifteen days after the conclusion of the forty-five day conflict of interest
2  discovery period.
3     DATED this 15th day of March, 2007.

```
                                    _____
                                           Mary H. Murgula
                                    United States District Judge
```